THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GABRIEL CORTEZ-VILLANUEVA,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**PUERTA DE TIERRA, LLC, ET AL.,**<br><br>    **Defendants.** | **Civil No. 23-1367 (ADC)** |

## OPINION AND ORDER

Pending before the Court are Puerta de Tierra, LLC and McCormack Baron Management Puerto Rico's ("defendants") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and motion for sanctions under Fed. R. Civ. P. 11. **ECF Nos. 14, 15**.

**I.  Procedural background**

    **A.  The complaint and the motion to dismiss**

On July 14, 2023, Gabriel Cortés-Villanueva ("plaintiff") filed the instant action against defendants in their capacity as landlords, for their alleged violations of several statutes including the Fair Housing Act ("FHA"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.*, and under Puerto Rico's general tort statute, P.R. Laws Ann. tit. 31 § 10801. **ECF No. 3**.

Plaintiff moved to proceed in forma pauperis. **ECF No. 1**. However, noting that plaintiff filed his action through retained counsel, the Court held in abeyance the motion to proceed in

forma pauperis and ordered plaintiff to "…submit to the Court plaintiff's agreement with retained counsel… Such filing shall be made under seal." **ECF No. 17**. Six days later, plaintiff paid this Court's filing fee. **ECF No. 21**. However, plaintiff did not comply with this Court's order to submit plaintiff's agreement with retained counsel. **ECF No. 17**. Regardless, in order to move forward with the case, the Court denied as "moot" plaintiff's motion at **ECF No. 1** to proceed in forma pauperis.

Defendants moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1). **ECF No. 14**. In essence, defendants claimed that the parties to this action had already reached a "settlement" agreement during the pre-suit conciliation proceedings before the U.S. Department of Housing and Urban Development ("HUD"). *Id*. Based on their contention that plaintiff was foreclosed or estopped by res judicata from filing the instant action, defendants also sought relief pursuant to Fed. R. Civ. P. 11. **ECF No. 15** at 1 ("both Plaintiff and Plaintiff's attorney filed and have consistently refused to withdraw the Complaint despite being aware that the parties' entered into a valid settlement agreement…"). Defendants argue that plaintiff's and his new legal counsel knowingly filed a complaint that is "frivolous, meritless and for improper purposes… causing unnecessary delay, needlessly increasing the cost of litigation, and unjustifiably congesting an already congested" calendar. *Id*., at 1-2. Finally, defendant sustain that they complied with Fed. R. Civ. P. 11's safe-harbor provisions. *Id*.

In a three page-response, plaintiff argued that no "settlement" materialized because the agreement between the parties was neither put in writing nor signed by the parties as is now

required by Article 1503 of the recently enacted and current Civil Code of Puerto Rico. P.R. Laws Ann. tit. 31, § 10647. **ECF No. 23**. As to defendants' Rule 11 motion, plaintiff filed a one-paragraph response asserting that defendants' request was improper since they failed to "serve the motion at least 21 days prior to filing with the Court." **ECF No. 24**. Defendants replied. **ECF Nos. 28, 29**.

### B.    The HUD proceedings, negotiations, and agreements reached by the parties

According to the materials submitted in support of defendants' motions (which has gone unchallenged by plaintiff), defendants tendered an offer to resolve plaintiff's HUD charges on August 22, 2022. **ECF No. 14-2**. On September 16, 2022, plaintiff's then-counsel, attorney Jackeline Cuadrado-Concepción, sent a counteroffer in writing incorporating several conditions, including a payment of $10,000.00 to plaintiff for alleged damages. **ECF No. 14-3**. On September 28, 2022, defendants made a second written counteroffer, through HUD, agreeing, *inter alia*, to pay plaintiff $10,000. **ECF No. 14-5**. Two days later, plaintiff's counsel informed HUD in writing that plaintiff accepted the terms of defendant's latest counteroffer and outlined the specific terms and conditions to be "stipulated" before finalizing the agreement. **ECF No. 14-6**. These terms included, among other things, transferring plaintiff to another apartment and the agreed payment of $10,000.00. *Id*. On October 3, 2022, HUD informed defendants of plaintiff's agreement to these terms and proposed "stipulat[ions] before finalizing the agreement." **ECF No. 14-7**. On December 6, 2022, plaintiff's counsel followed up with a letter (signed by counsel) to HUD stating that:

> …On September 30, 2022, we reached an agreement with the HUD program in case HUD-02-22-1809-8 with regard to the matter of the move and the compensation for [complainant]… We were told that we would be receiving the agreements in writing in order for us to evaluate and sign them and thereby commence [complainant]'s transition from one apartment to the other.
>
> …We need this process to be completed, in accordance with what was agreed, and to put an end to [complainant]'s anguish and suffering with this change of apartments.
>
> In view of the foregoing, we very respectfully ask that the agreement reached be complied with, so that we can commence the transition process after we evaluate the agreement in writing and thereby conclude this conciliation.
>
> I will be waiting for your response.

**ECF No. 26-5**. After this communication, HUD circulated a draft of the agreement. In response to the draft of the agreement, on February 9, 2023, plaintiff's counsel again wrote to HUD:

> Having discussed and analyzed the rough draft of the conciliation agreement with my client, we have identified the following aspects, which we consider must be included as part of the agreement in order to be able to conclude the process:
>
> 1. The agreement mentions in a general manner that the reasonable accommodations for Mr. [redacted] must be complied with. However, we would like to have in writing that Mr. [redacted]'s accommodations in the apartment (which he currently has) are: a handicap toilet, a shower with a hose, a seat in the shower, and grab bars in the bathroom to prevent accidents.
>
> 2. According to what my client has investigated, in the apartment complex, in the area where the apartment that he will be moving to is located, he does not have a handicap parking space in the surrounding area. The closest handicap parking space is located many feet away. Therefore, we want it to be included in the conciliation that the complex must identify a handicap

parking space in the area of the building, Apt. [redacted] provide services to her client.

3. The conciliation agreement mentions that McCormack will have 20 calendar days to carry out the unit transfer. However, it is established that they will only pay for a stay of a maximum of 4 days for the process of the move. In this regard, we ask that it be clarified that if the move takes longer than 4 days, the defendants will be responsible for paying the additional days that this may entail.

4. That the next rough draft of the conciliation agreement be sent in Spanish, as it is my client's first language.

5. That the hotel selected by the defendants is not adequate for Mr. [redacted]. Therefore, we suggest three options of hotels that meet Mr. [redacted]'s reasonable accommodation requirements and that the room have two beds for his caregiver[…]

**ECF No. 26-19** at 14-15. A couple of weeks later, HUD notified plaintiff's counsel that defendants had accepted the latest requests and additions to the agreement. Specifically, HUD notified plaintiff that the "other party's legal counsel has accepted your proposals… Please now wait for these proposals to be set forth in writing in the agreement so that I can send it to you, and you can reach an agreement." **ECF No. 26-6** at 1.

On May 30, 2023, plaintiff's counsel replied, that plaintiff "wants to continue with the original agreement" and unequivocally stated that "he is ready to sign it whenever you all are ready…." **ECF No. 26-9** at 2.

C.   **Plaintiff's new counsel and the withdrawal of the HUD charges**

Roughly two weeks later, attorney José Carlos Vélez-Colón ("Attorney Vélez-Colón") made an appearance by reaching out to HUD via email. **ECF No. 14-14**. He claimed that plaintiff

had retained him as his new legal representative and informed HUD that he intended to litigate in court. *Id.*, at 3. HUD tried to persuade plaintiff, through his new counsel, to have a conference call to discuss plaintiff's sudden change of heart and the risks associated with it. *Id.*, at 4. HUD's specialist assigned to the case was particularly worried that defendant would "drop the[] negotiations after so much time has passed." *Id.*, at 4. Thereafter, HUD tried to communicate with Attorney Vélez-Colón to no avail. *Id.*, at 1 (noting that Attorney Vélez-Colón "[was] not willing to talk to [HUD] over the phone."). On June 23, 2023, HUD informed defendants that the case was closed following plaintiff's withdrawal of HUD charges. **ECF No. 14-15**.

## II. Legal standard

Federal courts are courts "of limited jurisdiction, limited to deciding certain cases and controversies." *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 21 (1st Cir. 2016). Accordingly, a defendant may move to dismiss a complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The "party asserting jurisdiction has the burden of demonstrating its existence." *Fina Air Inc. v. United States*, 555 F. Supp. 2d 321, 323 (D.P.R. 2008).

Jurisdictional challenges may be "launched in either of two formats[:]" a facial or factual attack. *Valentín v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001); *Cámara de Mercadeo, Industria y Distribución de Alimentos, Inc. v. Emanuelli-Hernández*, 21-1156 (RAM), 2021 WL 5605098, at *2 (D.P.R. 2021). The facial type or sufficiency challenge "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter

jurisdiction." *Id*. (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). In this modality the Court credits plaintiff's well-pleaded factual allegations.

Conversely, a factual challenge "permits (indeed, demands) differential factfinding." *Id*. In other words, the complaint's "jurisdictional averments are entitled to no presumptive weight[.]" *Id*. Thus, the Court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Id*. (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987)).

If, on the other hand, the "jurisdictional facts, though genuinely disputed, are inextricably intertwined with the merits of the case… the court may defer resolution of the jurisdictional issue until the time of trial." *Valentín v. Hospital Bella Vista*, 254 F.3d at 363 n. 3 (citing *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997); *cf. Foster–Miller, Inc. v. Babcock & Wilcox*, 46 F.3d 138, 146–47 (1st Cir. 1995).

### III. Discussion

#### A. The arguments before the Court

The gist of the controversy before the Court is whether the parties executed a "settlement agreement, meticulously addressing all causes of actions and claims asserted in the Complaint" that deprives this Court of jurisdiction. **ECF No. 14** at 1. Defendants' argument is facially a simple one: that during the HUD proceedings, defendants "reach[ed] a mutual agreement [with plaintiff] in writing on specific terms and conditions. Thus, forming a valid and enforceable

settlement agreement." *Id.*, at 1, *see also* id., at 9 ("there is a valid and enforceable settlement agreement between the parties since September 30, 2022."). Defendants further sustain that such agreement constitutes res judicata baring the instant action.

Plaintiff opposes defendants' request for dismissal only from a legal standpoint. *In toto*, he argues that:

> the communications between the parties' counsel during the HUD proceedings did not result in a valid and enforceable settlement agreement… a settlement agreement must be in writing and signed by the parties to be valid and enforceable. 31 L.P.R.A. § 10647. Here, the email exchanges relied upon by Defendants do not constitute a signed, written settlement agreement. At most, they reflect negotiations toward a potential settlement agreement that was never finalized or executed…
>
> …the Defendants are trying to enforce a mere draft of an agreement that was never signed neither by them or by the Plaintiff, therefore without a written, signed settlement agreement as required by Puerto Rico law, Defendants cannot establish the parties entered into an enforceable settlement contract. The email exchanges between counsel simply reflect settlement negotiations that did not culminate in a binding agreement….

**ECF No. 23**. For the reasons stated herein and with the evidence submitted thus far, the Court cannot find that res judicata bars jurisdiction.

**B.    The agreements reached by the parties and the applicable law**[1]

**(1)    The settlement contract under the 2020 Civil Code, generally**[2]

The current version of the Puerto Rico Civil Code ("2020 Civil Code"), Act No. 55 of June 1, 2020, PR Laws Ann. Tit. 31, § 5311 *et seq.*, entered into force on November 28, 2020. Importantly, the 2020 Civil Code repealed the Code that was in place since 1930. *See Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc.*, 79 F.4th 1, 5 n. 1 (1st Cir. 2023).[3] Chapter XX, Book V, of the 2020 Civil Code regulates settlement contracts. Not only does this Chapter reshuffle and modify several articles of the 1930's Civil Code, but it also establishes new law.

In its relevant part, Article 1497 of the 2020 Civil Code "establishes that with a settlement agreement, through reciprocal concessions, the parties put an end to a litigation or to their uncertainty regarding a legal relationship." *Feliciano Aguayo v. MAPFRE Panamerican Insurance Company*, 207 D.P.R. 138, n. 38 (2021)(quoting P.R. Laws Ann. Tit. 31, § 10641); certified translation at **ECF No. 26-17** at 9.[4] Whether the agreement is reached in court proceedings or extrajudicially, "settlement agreements are interpreted restrictively." *Id.*, at n. 45 (quoting PR

---

[1] This Opinion and Order's analysis of the applicable substantive law is severely curtailed due to the fact that most of the relevant legal materials and authorities are only readily available in the Spanish language.

[2] The parties agree that Puerto Rico contract law controls.

[3] Although the 2020 Civil Code does not have an official English translation, defendants submitted certified English translations of several relevant portions thereof. **ECF No. 26-12**.

[4] Evidently, a settlement agreement can be executed before the "uncertainty regarding a legal relationship" reaches a court.

Laws Ann. Tit. 31, § 10643); certified translation at **ECF No. 26-17** at 10. Moreover, as correctly pointed out by defendants, under both the 1930 and the 2020 Civil Codes a settlement agreement carries res judicata effect. *See* PR Laws Ann. Tit. 31, § 10644; *Citibank Global Markets, Inc. v. Rodríguez-Santana*, 573 F.3d 17, 23 (1st Cir. 2009)(citing P.R. Laws Ann. tit. 31, § 4827(repealed))("[w]here compromises are validly consummated, they bind the parties to the [settlement][5] in the same manner as the doctrine of res judicata.").

While some civil law commentators debated over the existence of formal requirements in the 1930 Civil Code's formulation of settlement agreements, Article 1503 of the 2020 Civil Code unambiguously requires that the agreement be reduced to writing.[6] To wit, Article 1503 of the 2020 Civil Code provides that:

> The settlement must be set forth in writing and signed by the parties, or in a resolution or judgment rendered by the court. If it relates to rights constituted by public deed, this formality is required. The failure to follow these rules shall render the same null.
>
> Accord and satisfaction shall have the effects established by law.

**ECF No. 26-13**.[7] Unlike other agreements, however, an out-of-court agreement to settle a dispute has no formal requirement other than being in writing and signed. It need not be in a public

---

[5] The parties refer to a type of contract known in Puerto Rico as "*transacción*." This contract is currently regulated by Article 1497 of the 2020 Civil Code. PR Laws Ann. tit. 31, § 10641. However, there is no official translation available. Thus, even though the official translation available for the 1930 Civil Code translated "transacción" to "compromise," *see* PR Laws Ann. tit. 31, § 4821 (repealed), the Court will use the parties' chosen term: "settlement."

[6] *See* L. R. Rivera Rivera, *El Contrato de Transacción, sus efectos en situaciones de solidaridad,* Jurídica Editores, San Juan, P.R., 1998, at 55-57.

[7] Plaintiff did not challenge the certified translation submitted by defendants.

deed or follow a particular form such as, for example, mortgage deeds or other business transactions that require recordation in the Puerto Rico Property Registry.

As discussed below, the record and the evidence submitted show that plaintiff, through counsel, purportedly agreed to settle his claims against defendants. What the evidence does not support is a finding that he actually settled. That seems to be the case here because, although thin and obfuscated, the 2020 Civil Code's "in writing" requirement appears to draw a line between agreeing to settle and formally settling.[8]

**(2)    The parties' written agreements**

Here, defendants submitted several email threads evincing a detailed exchange of terms, offers, and counteroffers. These terms were discussed among the parties and HUD to put an end to plaintiff's demands and the controversies between the parties, rooted in their landlord-tenant relationship. The parties' back and forth correspondence (through HUD) clearly shows that they came to an agreement as to certain specific issues including plaintiff's relocation to a different apartment and a $10,000 payout for plaintiff's damages. Contrary to plaintiff's superficial characterizations, these were not just mere "discussions." **ECF No. 23** at 2.[9] The evidence shows that plaintiff clearly and unequivocally manifested his acceptance of defendants' offer via email

---

[8] The are no opinions by the Puerto Rico Supreme Court or Court of Appeals interpreting the articles of the 2020 Civil Code related to settlement contracts or compromises.

[9] Plaintiff made no effort to present a developed argument as to this assertion. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

and letter. As a matter of fact, plaintiff's counsel repeatedly stated that plaintiff wished to sign the agreement as soon as possible. To that end, plaintiff's counsel complained that HUD was taking too long preparing the final draft of an agreement to dismiss HUD's conciliation proceedings and insisted that HUD share a copy with him as soon as practicable for plaintiff to sign. Therefore, both the offer and plaintiff's acceptance satisfy Article 1503's "in writing" requirement. But that is not the only requirement of Article 1503.

### (3)    The extrajudicial settlement must be signed[10]

Article 1503 also requires that the agreement reached by the parties in this case be signed. It is beyond dispute that under the 2020 Civil Code electronic signatures are generally accepted in Puerto Rico. *See* Article 278 of the 2020 Civil Code, P.R. Laws Ann. Tit. 31, § 6162. Neither do the parties object that a legal representative can consent on behalf of his or her client and sign an agreement in such capacity (as long as it is encompassed in the attorney-client relationship, which is not at issue here).[11] However, based on the material submitted at this stage of the litigation and the lack of interpretation by state courts of Article 278 of the 2020 Civil Code, the

---

[10] The text of Article 1503 is not a paragon of clarity. For example, on one hand, Article 1503 states that settlement can materialize via court "resolution" or "judgment," both of which are issued without the parties' signature. On the other hand, a plain text interpretation would suggest (without deciding it here, of course) that the lack of the parties' signature would "render the [settlement] null."

[11] Plaintiff did not develop an argument against such ruling. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Court cannot conclude that the agreement was signed by both parties or their legal representatives in a manner consistent with Article 1503.

Indeed, most of the emails containing the terms of the agreement and the acceptance thereof only include what the Court can assume is an automatic sign-off by email software. These sign-off include the sender's signature block, which generally contains the names, address, and other basic information of the sender. However, they do not always include a signature, or any other form indicative of a digital signature, be it in a digital calligraphy trace or technography typed. Of particular relevance here, the signature blocks on the majority of the emails under scrutiny do not contain a special character or other designations such as, for example, the "*S/*" used for Court filings.

Defendants argue that these signature blocks are valid signatures and suffice for Article 1503 purposes. First, defendants underscore the September 30, 2022 email from plaintiff's counsel in which plaintiff accepts the terms offered by defendants through counsel. **ECF No. 26-4**. At the bottom of that email and with a different font than the one used for the rest of the email communication, the email reads as follows:

Ms. Jackeline Cuadrado Concepción, Esq.
Firma Legal PR
(787) 515-0309

Confidentiality[…]

**ECF No. 26-4**. The Court agrees that the September 30, 2022 emails is material, but it is not convinced (at this stage) that it is "signed" for purposes of settlement under the 2020 Civil Code.

To wit, given the fact that Article 1503 "does not have a precedent in the repealed Civil Code[,]" the Court does not think it is unreasonable to require more evidence to determine if what appears to be an autogenerated email signature block was intended to be plaintiff's counsel electronic signature for settlement.[12] *See Feliciano Aguayo v. MAPFRE Panamerican Insurance Company*, **ECF No. 26-17** at n. 47 (noting that 1503 has no direct homologue in the previous Civil Code).

The Court's reasoning is bolstered by the fact that the record contains other written communications where plaintiff's counsel accepted the terms of the agreement with a clear and definitive signature. To wit, on December 6, 2022, plaintiff's counsel sent a letter signed by hand whereby plaintiff reiterates his acceptance of the terms proposed by defendants and demands that the "agreement reached be complied with." **ECF No. 26-5** at 2. Even if this letter could be construed as proof that a settlement agreement under Article 1503 was executed by plaintiff, the same cannot be said with confidence as to defendants.

Indeed, aside from what seems to be autogenerated email signature blocks, the Court cannot find defendants' counsel signature in any of the emails or materials submitted thus far. And, once again, at this stage it would be premature to make a determination as to the intent behind the use of an email signature block in this case.

---

[12] To be clear, the Court is not deciding here that an autogenerated signature block is not a signature under the 2020 Civil Code, it is simply ruling that in the case at bar, it cannot make such finding at this stage of the proceedings.

Considering that there is no readily available interpretation by the Puerto Rico Supreme Court or the Puerto Rico Court of Appeals about the signature requirement of the newly minted Article 1503, the Court understands it prudent to hear more evidence both on intent of the parties and perhaps evidence from then-counsel for plaintiff, attorney Jackeline Cuadrado-Concepción on the issue of whether or not they signed off on the agreement to settle.[13]

Second, defendants argue that the signature blocks are a valid signature under two Puerto Rico statutes. *See* **ECF No. 28** at 3. Namely, the Labor Transformation and Flexibility Act, P.R. Laws Ann. Tit. 29, § 122e, and the Electronic Transaction Act, P.R. Laws Ann. Tit. 10, §§ 4081-4096. The Court already explained that electronic signatures are valid under the 2020 Civil Code. However, the requirements of a valid electronic signature under the new Code, if any, are yet to be defined by Puerto Rico courts.

Defendants' argument under the Labor Transformation and Flexibility Act and the Electronic Transaction Act fail to carry the day. The first statute cited by defendants, known as the Labor Transformation and Flexibility Act, P.R. Laws Ann. Tit. 29, § 121 et seq., only regulates and operates in the "employer-employee" relationship or the employment contract. *See id*., § 122. Moreover, the Electronic Transaction Act, P.R. Laws Ann. Tit. 10, § 4081 et seq., states that "(b)… this chapter shall not apply to the following transactions[…] (11) Any other transaction or act that needs a requirement of form pursuant to the Civil Code to be valid." *Id*., at § 4082.

---

[13] The Court commends defendants' counsel's efforts in drafting and supporting its position.

## IV. Conclusion

As explained before, this case presents several issues that counsel against a finding of res judicata, which would deprive plaintiff of having his day at Court in a motion to dismiss stage. In light of all the above and given the murky circumstances under which plaintiff allegedly retained Attorney Vélez-Colón and simultaneously changed his mind as to the settlement he agreed to, the Court cannot grant defendants' requests. Indeed, the underpinnings of the case presented thus far paint a far more complicated picture that could include, the filing of counterclaims such as, for example, for specific performance, *culpa in contrahendo* or a claim of tortious interference with the agreements reached thus far between plaintiff and defendants, if any. Accordingly, the motion to dismiss at **ECF No. 14,** is hereby **DENIED** it **WITHOUT PREJUDICE**. Since defendants' Rule 11 motion at **ECF No. 15** hinges on a finding of res judicata, it is also **DENIED WITHOUT PREJUDICE**.

Plaintiff is granted 10 days to comply with the Order at **ECF No. 17** by submitting under seal the agreement between plaintiff and retained counsel. Failure to comply may and will result in monetary or other sanctions.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of September, 2024.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**